1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12
13
14
15
16
17

MARY A. THRESHER,

               Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner,
Social Security Administration,

             Defendant.

CASE NO.    C06-5071RBL

REPORT AND
RECOMMENDATION

Noted for October 20, 2006

18
19
20
21

     This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W.
v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed.  After reviewing the record the
undersigned recommends that the Court affirm the administrative decision.

22

## FACTUAL AND PROCEDURAL  BACKGROUND

23
24
25
26
27
28

     Plaintiff, Mary Thresher, was born in 1958.  She attended school through the ninth grade, when she
dropped out.  Apparently, Ms. Thresher's mother was disabled and her father was a serious alcoholic.
These factors contributed to poor performance in school, and thus, Ms. Thresher wanted to move out of
the family home as soon as possible.  She got married when she was seventeen and had a child.  Since then,
Ms. Thresher has divorced and married three times.  She has a total of five children (three daughters and
two sons).  She is currently single and lives with her youngest daughter, who is approximately twelve years

1   old.

2        Plaintiff has worked in the past as a foster care visitation specialist and as a cleaner at an assisted

3   living facility.  In the year 2000, Ms. Thresher was training to become a certified nurse's assistant, but for

4   one reason or another she was unable to complete this training, including a work related injury in March

5   2000 and an automobile accident.   The record reflects that Ms. Thresher has been involved in at least three

6   separate motor vehicle accidents since April 2000, which have created and exacerbated her claims of pain

7   and physical limitations.

8        On May 7, 2002, Plaintiff filed an application for social security income benefits, alleging she has

9   been disabled, unable to work, since February 14, 2000, due to a head injury, memory problems,

10  depression, and pain in a number of areas of her body (Tr. 25, 79).  Her application was denied initially and

11  upon reconsideration (Tr. 25, 48-50).  Plaintiff then requested a hearing before an administrative law judge

12  ("ALJ"), which was held on August 11, 2004 (Tr. 25, 433-461).  The ALJ issued a decision denying

13  Plaintiff's application (Tr. 25-39).  The Appeals Council denied Plaintiff's request for review (Tr. 4-6),

14  making the ALJ's decision the final Agency decision. 20 C.F.R. §§ 416.1481, 422.210.

15       Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as

16  amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final decision denying plaintiff's

17  applications for social security benefits.  In her opening brief Ms. Thresher alleges the following: (1) her

18  impairments meets listing 12.05(c), Mental Retardation; (2) the ALJ's rejection of the examining source's

19  opinion is clear legal error and not supported by substantial evidence of record; (3) the ALJ's reliance on

20  the Grids, despite Plaintiff's significant nonexertional limitations is legal error and unsupported by the

21  substantial evidence of record; (4) the ALJ's residual functional capacity contains legal error and is

22  unsupported by the substantial evidence of record; and (5) the ALJ erred in her evaluation of Plaintiff's

23  credibility and substantial lay witness evidence supports the credibility of Plaintiff's testimony and claim.

24                                DISCUSSION

25       This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper

26  legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman

27  v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a

28  reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389,

REPORT AND RECOMMENDATION
Page - 2

401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984). After reviewing the record the undersigned finds the ALJ's decision is properly supported by substantial evidence in the record and free of legal error.

## A.   *THE ALJ PROPERLY CONCLUDED PLAINTIFF SUFFERS FROM BORDERLINE INTELLECTUAL FUNCTIONING, RATHER THAN MENTAL RETARDATION*

Plaintiff argues the ALJ erred when she did not find Ms. Thresher Mentally Retarded, a listed impairment under section 12.05C. 20 C .F.R. § 404.1520(a)(4)(iii). To meet listing 12.05C, Ms. Thresher's impairment must satisfy the introductory paragraph of listing 12.05, which states that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. In addition, the claimant must have: 1) a valid verbal, performance, or full scale I.Q. of 60 through 70; and 2) a physical or other mental impairment imposing additional and significant work-related limitation of function. <u>Id</u>.

Here, the ALJ specifically addressed the question of whether or not Ms. Thresher's mental limitations were totally disabling. She wrote:

> While she has some limits as a result of her borderline IQ and depression, they are not of a level to be totally disabling. Under 20 CFR § 416.920(a), I must rate the claimant's degree of mental functional limitation in four broad functional areas: activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. The claimant has depression, stable on medications and borderline intellectual functioning, as defined in part "A" of the Listing of Impairments. Based on the record as a whole, under part "B" of the listings, these impairments can be expected to cause mild restrictions in the claimant's activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, and pace. There is no evidence that the claimant has experienced any episodes of extended decompensation. Consequently, the claimant's mental functioning is not at the level to have two marked functional limitations to meet the "B" criteria. Further, there is no evidence that the claimant meets any of the criteria under part "C" of the listings. These limits are consistent with her actual level of functioning that has been extensively explored in this decision.

Tr. 33.

The medical evidence supports the ALJ's finding that Ms. Thresher not mentally retarded, or disabled per section 12.05(C) of the Listings as argued by Plaintiff. The ALJ relied on Dr. Chalstrom's

diagnosis of borderline intellectual functioning over a diagnosis of mild mental retardation.  Tr. 33.  Dr. Chalstrom wrote, "I diagnosed Borderline Intellectual Functioning, rather than Mild Mental Retardation, even though her IQ scores are right between those two diagnoses.  Her adaptive functioning seems to be in the Borderline Intellectual Functioning range, with none of the major impairments necessary for a diagnosis of Mild Mental Retardation."  Tr. 298.  Plaintiff argues the ALJ should have relied more heavily on Dr. Chalstrom's IQ testing results, which were 68 verbal and 72 performance, and a full scale IQ score of 67.  Significantly, the Commissioner is not required to accept a claimant's I.Q. scores and may reject scores that are inconsistent with the record.  Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir.1998).  Morever,  the ALJ should examine test results of this sort to assure consistency with daily activities and behavior.  Id. For purposes of the court's review, the question is whether the ALJ's decision to disregard IQ scores that indicated a disability scores as unreliable is supported by substantial evidence.  Id.

Here, not only did Dr. Chalstrom find that her I.Q. scores, which would have supported a finding of Mental Retardation, did not persuade him to find Plaintiff mentally retarded, the record reflects that other substantial evidence exists to support the ALJ's decision to discredit the  I.Q. scores.  Because there is substantial evidence that she does not have deficits in adaptive functioning, there is substantial evidence that she does not meet listing 12.05C.

## B.  THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant

1   that conflicted with the treating physician's opinion.

2       "In evaluating the evidence, the reviewing court must look at the record as a whole, weighing both

3   the evidence that supports and detracts from the Secretary's conclusion. *Gonzalez*, 914 F.2d at 1200. The

4   trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can

5   support either outcome, the court may not substitute its judgment for that of the ALJ. *Richardson*, 402

6   U.S. at 400, 91 S.Ct. at 1426-27; *Allen*, 749 F.2d at 579." <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th

7   Cir. 1992).

8       In this case, Plaintiff argues the ALJ erred in her adoption of Dr. Chalstroms' opinion over the

9   opinion of Dr. Brown.  Both of these experts are psychologists, who evaluated Ms. Thresher's mental

10   functioning ability.  Dr. Brown evaluated Ms. Thresher on or about March 8, 2002.  Tr. 254-261.  She

11   concluded that Ms. Thresher should be considered temporarily disabled, pending further physical

12   evaluations for injuries sustained in a previous vehicle and work related accident.  Dr. Brown stated the she

13   felt Ms. Thresher's global assessment functioning level equaled 50, representing a serious limitation and

14   that such impairment(s) would last 12 months "with the goal of ruling out a cognitive impairment."  Tr.

15   257.

16       The ALJ did not adopt the findings of Dr. Brown.  The ALJ, reviewing the medical evidence of

17   record as a whole, concluded Plaintiff suffered from "borderline intellectual functioning, depression, stable

18   on medication, degenerative disc disease, and a chronic pain syndrome."  Tr. 38.  The ALJ recognized

19   discrepancies between the evaluating opinions of Dr. Brown and Dr. Chalstrom, and was entitled to

20   resolve those conflicts.  The ALJ properly relied on the opinion and findings of Dr. Chalstrom over those

21   of Dr. Brown.  The ALJ specifically cited Ms. Thresher's daily activities, which reflected an ability to

22   perform as Dr. Chalstrom described (discussed above).  Tr. 32-33.

23   *C.  ALJ PROPERLY RELIED ON THE GRIDS TO SUPPORT FINDING PLAINTIFF NOT DISABLED*

24       Where, as here, a claimant carries his burden of establishing he is unable to perform his past

25   relevant work, the ALJ bears the burden of establishing the claimant can adjust to other work. <u>Tackett v.</u>

26   <u>Apfel</u>, 180 F.3d 1094, 1100 (9th Cir.1999). The ALJ can satisfy this burden by taking the testimony of a

27   vocational expert or by using the Medical-Vocational Guidelines.  <u>Id</u>. at 1101.  However, the ALJ may rely

28   on the Guidelines alone "only when the [Guidelines] accurately and completely describe the claimant's

1    abilities and limitations." Id. at 1102 (*quoting* Jones v. Heckler, 760 F.2d 993, 998 (9th Cir.1985)); see

2    also 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00(a), (e).

3

4         Here, the ALJ properly relied on the Medical-Vocational Guidelines ("Guidelines").  No vocational

5    expert testimony was required where Ms. Thresher's limitation to simple work was adequately dealt with

6    under the Guidelines.  Use of the Guidelines allows the Commissioner to streamline the administrative

7    process and encourages uniform treatment of claims. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983)

8    (discussing the creation and purpose of the Guidelines). Furthermore, the Guidelines were formatted by

9    taking "administrative notice . . . of the numbers of unskilled jobs that exist throughout the national

10   economy at the various functional levels." 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(b) (2003).

11   Unskilled work, by definition, is simple work. The Regulations state:

12
13             (a) *Unskilled work*. Unskilled work is work which needs little or no judgment to do simple
               duties that can be learned on the job in a short period of time. The job may or may not
14             require considerable strength. For example, we consider jobs unskilled if the primary work
               duties are handling, feeding and offbearing (that is, placing or removing materials from
15             machines which are automatic or operated by others), or machine tending, and a person can
               usually learn to do the job in 30 days, and little specific vocational preparation and judgment
16             are needed. A person does not gain work skills by doing unskilled jobs.
17   20 C.F.R. § 416.968(a).

18        In most cases, the Guidelines may be used only where they "completely and accurately represent a

19   claimant's limitations." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Desrosiers v. Sec'y of HHS,

20   846 F.2d 573, 576-77 (9th Cir. 1988) (non-exertional impairment may limit claimant's functional capacity

21   in ways not contemplated by the Guidelines, rendering the Guidelines inapplicable). In cases where the

22   Guidelines are "not fully applicable," the ALJ may meet his burden under step- five by propounding

23   hypothetical questions to a vocational expert, based on medical assumptions supported by substantial

24   evidence in the record, that reflects all the claimant's limitations. Roberts v. Shalala, 66 F.3d 179, 184 (9th

25   Cir. 1995).

26        This is an unusual instance where reliance on the Guidelines, without seeking the testimony of a

27   vocational expert, is permissible despite the existence of a significant non-exertional limitation, i.e.,

28   Borderline Intellectual Functional, which limits Ms. Thresher to simple, routine, repetitive tasks (unskilled

     work).  The ALJ found that Plaintiff was able to work at all exertional levels of the Guidelines, and thus, in

1   accordance with regulatory guidelines, a finding of not disabled was proper (Tr. 37-38).  *See* Social

2   Security Ruling (SSR) 85-15 ("Where there is no exertional impairment, unskilled jobs at all levels of

3   exertion constitute the potential occupational base for persons who can meet the mental demands of

4   unskilled work. These jobs ordinarily deal primarily with objects, rather than people, and they generally

5   provide substantial vocational opportunity for persons with solely mental impairments").   In accordance

6   with the regulatory guidance of SSR 85-15, the record, as determined by the ALJ, reflects no exertional

7   limitations and can meet the mental demands of unskilled work; therefore, the ALJ's use of the [Guidelines]

8   was appropriate.. Substantial evidence supports the ALJ's finding that Plaintiff is able to perform

9   alternative work.

10  *D.*      *THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY*

11          If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work

12  activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the

13  claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a

14  claimant did in the past.  20 C.F.R. § 404.1520(e).

15          Plaintiff argues the ALJ failed to properly evaluate Ms. Thresher's RFC.  After reviewing the

16  medical evidence and concluding that Plaintiff suffered from the severe impairments, noted above, the ALJ

17  evaluated her RFC.  The ALJ wrote:

18          After considering all these factors, my review of the record does not support causative
19          limitations due to pain to the extent the claimant has alleged.  Consequently, the medical
            evidence does not support the claimant's allegations that pain prevents her from performing
20          all work activity (SSR 96-7p).

21          Pursuant to SSR 96-6p, I have considered the opinions of the medical consultant who
            reviewed the claimant's file for the Disability Determination Services.  They determined that
22          the claimant would be capable of light exertional activity (Exhibit 15F).  Medical
            consultants also reviewed the claimant's mental impairments for the Disability
23          Determination Services.  They determined that the claimant would be able to concentrate
            adequately to perform simple and repetitive tasks, work with the general public, and adapt
24          to changes in the work environment (Exhibit 14 F, p.3).  This is consistent with the opinion
            of Dr. Chalstrom that the claimant was not precluded from returning to her previous line of
25          work which was unskilled in nature, from psychiatric or cognitive impairments (Exhibit 12F,
            p.3).  I find that the physical and mental functional assessments by the medical consultants
26          are consistent with the record and would not be beyond the claimant's functional capacity
            and I adopt them.

27          Accordingly, based on the above evidence, the record supports the following residual
            functional capacity.  As a result of her mild back pathology and her chronic pain syndrome,
28          the claimant retains the ability to lift and carry 10 pounds frequently and 20 pounds
            occasionally .  This level of activity is also consistent with her actual level of functioning.

1    She is able to sit, stand, and walk for about six hours in an 8-hour workday. Due to
2    borderline intellectual functioning, the claimant is restricted to simple repetitive tasks.

Tr. 36.

3
4         Plaintiff argues the ALJ's RFC assessment was made in error because she did not include properly
5    credit Dr. Brown's opinion and properly assess the records of Dr. Chalstrom. As discussed above, the ALJ
6    properly evaluated the medical evidence, and the ALJ's RFC assessment is consistent with that analysis.
7    After reviewing the record, this court does not find any error in the ALJ's evaluation of Plaintiff's RFC.

8    **E.    THE ALJ PROPERLY CONSIDERED AND WEIGHED MS. THRESHER'S CREDIBILITY AND
         THE STATEMENTS OF LARRY QUEEN**

9         The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's
10   interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Bunnell v. Sullivan, 947
11   F.2d 341 (9th Cir. 1991) (en banc), is controlling Ninth Circuit authority on evaluating plaintiff's subjective
12   complaints of pain. Bunnell requires the ALJ findings to be properly supported by the record, and "must
13   be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's
14   testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'"
15   Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). Similarly,
16   the ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each witness whose
17   testimony s/he rejects. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d
18   915, 919 (9th Cir. 1993).

19        An ALJ may reject a claimant's subjective pain complaints, if the claimant is able to perform
20   household chores and other activities that involve many of the same physical tasks as a particular type of
21   job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen,
22   supra, and Smolen v. Chater, supra, the Social Security Act does not require that claimants be utterly
23   incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work
24   environment where it might be impossible to rest periodically.

25        Here, plaintiff argues the ALJ failed to properly consider her testimony regarding her symptoms
26   and functional limitations. In contrast to Plaintiff's arguments, the ALJ provided several legitimate reasons
27   for not accepting the degree of limitation or degree of functioning alleged by Ms. Thresher. First and
28   foremost is the medical evidence relied on by the ALJ, which is discussed above and does not support a

finding of total disability.  Specifically in regard to Ms. Thresher's credibility, the testimony/statements by

Randy Queen, and the allegations of total disability, the ALJ wrote a lengthy analysis.  The ALJ stated:

> I have considered the claimant's subjective complaints pertaining to her allegations of physical limitations due to pain. I note first that when she filed her application for disability, she stated that she was unable to work because of headaches and pain in her neck. She also alleged that she had pain in her shoulders and arms, limited mobility in her arms and numbness in her fingers, and pain in her hips. She stated that these problems limit her ability to lift and carry, that driving causes pain in her neck, shoulders, and back, and that turning her neck also causes pain (Exhibit 2E, p. 2).
>
> Randy Queen, a friend of the claimant, provided a third party statement. He indicated that he sees the claimant almost daily and has known her for 10 years (Exhibit 7E, p. 1). He corroborated the claimant's allegations of pain that he said basically prevents her from performing most activities for more than short periods (Exhibit 7E, p. 8). He stated that the claimant's legs arid arms are numb for hours when she gets up in the morning (Exhibit 7E, p. 8). He also said that she needs to rest a lot during the day for several hours (Exhibit 7E, p. 8), alters her positions often from sitting to standing (Exhibit 7E, p. 8), has trouble sleeping (Exhibit 7E, p. 7), can only sit for 10 to 15 minutes at a time (Exhibit 7E, p. 7), can only be on her feet 15 to 30 minutes (Exhibit 7E, p. 7), and sometimes is even unable to lift a gallon of milk (Exhibit 7E, p.8). The claimant falls down because her legs give out sometimes (Exhibit 7E, p. 7), and she sometimes walks with a limp (Exhibit 7E, p. 8). The claimant constantly complains of aches and pains. She has "fuzzy thinking" (Exhibit 7E. p. 7). Mr. Queen indicated that the claimant has difficulty focusing on things, including her conversation and speech, since her automobile accidents (Exhibit 7E, pp. 7, 8). He reported that family members have to help with household chores and drive her places (Exhibit 7E, p. 9).
>
> The claimant's hearing testimony does not lend credence to the above allegations. While Mr. Queen corroborated the claimant's testimony that she had pain and limitations in regard to sitting, standing, and lifting (Exhibit 7E, p. 7and 8), yet the claimant is considerably more active than she admitted to her medical providers, and she is much less impaired than she has led Mr. Queen to believe. For example, the claimant testified that she drives herself to church three times a week as well as to the store and to appointments. She further testified that she is active in her church, including teaching Sunday school, attending Bible studies, and, until recently, singing in the choir. The claimant also testified that she does housework, managing to sweep, mop, vacuum, do the dishes, and do the laundry, with the help of her daughter-in-law. The claimant also cleans the bathroom, but said she is unable to do anything for days after this. The claimant independently cares for herself and her 11-year-old daughter, her one child still living at home, and until recently cared for her older teenage children (Exhibitt SF, p. 32). The claimant's level of activity supports a very active routine of daily living and is not consistent with the severe limitations she has alleged in this record. While, the claimant has a poor work history, it is related to her children's needs and her desire to remain home with them rather than due to an inability to work. The overall evidence reflects a poor motivation to work, and the earnings record shows a poor work history (Exhibit 2D, p. 2). The claimant testified that she never worked more than one month at a time in the past because her children were having problems and she needed to be home with them. The claimant told a medical provider that she needed to stay home with her children but L&I was pressuring her to return to work (Exhibit SF, p.32). She told a medical provider that she did not feel she could work as a CNA because of stress and the need to stay home and supervise her teenage children (Exhibit SF, p. 32). A few months later, another treatment note indicates that the claimant reported she was being pressured by the state to participate in their Work First program (Exhibit SF, p. 27). The claimant testified that she managed to get exempted by the state and did not have to comply with their work program. This was during the period when she still had her teens at home. The

claimant has not shown any motivation to work outside the home but rather elected to stay home and care for her children while pursuing relief through various welfare and disability programs with what one doctor referred to as "a strong illness conviction and deactivation" (Exhibit 8F, p. 5). I noted that deactivation is not a medically disabling impairment as it is readily remedied by getting more active. In addition to her claim for SSI, the claimant has reopened her L&I claim and has been actively involved in litigation relating to her two car accidents (Exhibit 8F, p. 2). This evidence points to secondary gain as the claimant's underlying motivation for claiming disability.

Furthermore, the medical record shows evidence of questionable compliance with medical treatment. For example, the claimant reported to her medical provider that she was improving on June 5, 2000, following her second car accident. At that time, she was continuing with physical therapy and sleeping without difficulty (Exhibit 5F, p. 29). Thereafter, with litigation underway by August 2000, involving three different persons and multiple motor vehicle accidents, the claimant reported that her condition had worsened (Exhibit 5F, p. 28). Yet, in April 2001, the claimant had not followed through with physical therapy but was requesting that her disability forms be filled out (Exhibit SF, p. 1). The claimant told Dr. Goodman at the pain clinic in February 2002 that she had failed to start the physical therapy to which she had been referred by Dr. Bellabarba several months earlier (Exhibit 8F, p. 5). Dr. Goodman told the claimant that she needed several months of physical therapy before any specific intervention could be prescribed by the pain clinic to deal with her myofascial pain (Exhibit 8F, p. 6). In September 2002, she had not followed through with physical therapy, but was requesting that the doctor certify her as disabled (Exhibit I 8F, p. 24). In February 2004, the claimant had neglected to follow up on pain clinic referrals and had not returned to the pain clinic over the ensuing two years (Exhibit 27F, p. 3). This pattern of noncompliance further discredits the claimant.

I have considered the extensive diagnostic testing of record which has failed to support objective findings consistent with the claimant's alleged level of pain.

Tr. 34-35.

After reviewing the ALJ's decision and the administrative record, the court finds that the ALJ properly weighed plaintiff's credibility and the statements of Mr. Queen.  The medical evidence and Plaintiff's RFC assessment, as interpreted and relied upon by the ALJ (discussed above) does not support Ms. Thresher's self assessment or Mr. Queen's opinions regarding her limitations.   In addition, the ALJ properly relied on plaintiff's activities and lack of compliance with medical directions  to reject the degree of severity and disability alleged.  In sum, the ALJ provided clear and convincing and legitimate reasons for not believing allegations of total disability.

CONCLUSION

Based on the foregoing discussion, the Court should remand this matter to the Administration for further consideration.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

1   appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the

2   clerk is directed to set the matter for consideration on **October 20, 2006**, as noted in the caption.

3         DATED this 28th day of September, 2006.

4                                    <u>/s/ J. Kelley Arnold</u>
                                     J. Kelley Arnold
5                                    U.S. Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 11